# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff-Appellee,<br><br>v.<br><br>JOSE LUIS ZEPEDA-RODRIGUEZ,<br><br>                            Defendant-Appellant. | Case No.: 19-MJ-24357-LL-TWR<br><br>**ORDER (1) VACATING CONVICTION, AND (2) REMANDING TO MAGISTRATE JUDGE**<br><br>(ECF Nos. 51, 57) |

Presently before the Court is Defendant-Appellant Jose Luis Zepeda-Rodriguez's Appeal, (*see* ECF No. 57), of the October 29, 2020 Judgment in a Criminal Case finding him guilty of attempted illegal entry into the United States under 8 U.S.C. §1325(a)(1) and sentencing him to time served. (*See* EFC No. 51 (the "Judgment").) Zepeda-Rodriguez challenges the conviction on four grounds: (1) the government failed to prove the element of alienage because the arresting agent never testified that Zepeda-Rodriguez stated he was not a United States citizen, (*see* ECF No. 65 ("AOB") at 1, 7–10); (2) the prosecutor presented no evidence that Zepeda-Rodriguez knew he was not a citizen, (*see id.* at 1, 10–11); (3) the Honorable Linda Lopez erred in allowing the arresting officer to testify to his translation of Zepeda-Rodriguez's field statements because the translation was hearsay and unqualified expert testimony, (*see id.* at 1, 11–14); and (4) Zepeda-Rodriguez's prosecution violated equal protection because he was treated differently than similarly

situated citizens, (*see id.* at 1, 14, 22–25), and because Congress passed § 1325 with a discriminatory intent. (*See id.* at 1, 14–22.) Plaintiff-Appellee the United States of America filed a responsive brief, (*see* ECF No. 68 ("RB")), and Zepeda-Rodriguez filed a reply. (*See* ECF No. 70 ("ARB").) The Court has jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3402 and determines that this matter is suitable for determination on the papers without oral argument. Having carefully reviewed the Parties' briefs, the record, and the relevant law, the Court **VACATES** Zepeda-Rodriguez's conviction based on insufficient evidence of alienage but **DENIES** Zepeda-Rodriguez's appeal as to his remaining arguments and **REMANDS** this case to the magistrate for further proceedings.

## BACKGROUND

**I.   Evidence Introduced at Trial**

On November 9, 2019, United States Border Patrol Agent Joshua Ewers was working a 5 a.m. to 3 p.m. shift in the Pacific Crest Trail ("PCT") marker area in El Cajon station, the station in which he had been working for over eleven years. (*See* ECF No. 64 ("Trial Tr.") at 10:1–7, 10:15–17, 13:13–16, 13:22–14:3, 14:22–25, 37:21–38:4, 51:14–16.) The area is "[v]ery mountainous, rugged terrain, [with] thick brush," (*see id.* at 10:21–22), although the city of Campo is approximately one mile away, (*see id.* at 39:16–20), and Highway 94 is approximately one mile north. (*See id.* at 33:12–21.) The PCT is a popular hiking trail that begins in Campo and runs north to the Canadian border, (*see id.* at 30:25–31:5, 31:10–19, 41:11–42:6, 43:5–23), and there is an event center approximately a half-mile away. (*See id.* at 31:21–25, 38:24–39:1, 40:16–25.) There is no port of entry in El Cajon station, (*see id.* at 10:23–24), and the nearest port of entry is approximately nine-and-a-half miles to the west in Tecate, California. (*See id.* at 23:14–16, 33:22–34:5.)

Agent Ewers' assignment in the PCT marker area that day was to patrol a dirt road running parallel to the United States and Mexico international border fence for "footprints, disturbances in the dirt indicating that something had crossed the road." (*See id.* at 15:3–21.) At approximately 12:30 p.m., (*see id.* at 35:9–11, 37:11–12, 53:23–24, 59:7–8),

|   |   |
|---|---|
| 1 | Agent Ewers "detected several steps of fresh footprints at the United States Border that |
| 2 | appeared to be coming from Mexico and going north into the brush on the border road." |
| 3 | (*See id.* at 16:11–17; *see also id.* at 17:6–17.)  Although the area is busy, (*see id.* at |
| 4 | 49:12–15), Agent Ewers knew from experience that the footprints were fresh because of |
| 5 | their "color" and the fact that there were no tire tracks on top of the footprints. (*See id.* at |
| 6 | 34:21–35:3, 36:6–8, 62:18–24.)   Agent Ewers followed the footprints north for |
| 7 | approximately ten minutes until he was approximately 250 yards north of the international |
| 8 | border, (*see id.* at 17:18–18:5, 23:7–10, 59:9–10), and approximately 250 feet from the |
| 9 | monument marking the start of the PCT trial, (*see id.* at 42:22–43:4, 44:9–11, 49:6–11), at |
| 10 | which point he came across eight subjects laying down and trying to hide in the thick brush, |
| 11 | (*see id.* at 18:5–15, 62:7–11), one of whom Agent Ewers identified as Zepeda-Rodriguez. |
| 12 | (*See id.* at 23:22–24:8.)  Zepeda-Rodriguez did not have any hiking or camping equipment, |
| 13 | (*see id.* at 32:5–23, 44:15–17), or a hiking permit. (*See id.* at 62:12–14.)  In his eleven |
| 14 | years working in El Cajon station, Agent Ewers has never encountered a United States |
| 15 | citizen or anybody else with legal status laying in the brush in that area. (*See id.* at |
| 16 | 33:5–10.) |
| 17 |      At this point, Agent Ewers conducted an immigration inspection in Spanish.[1]  (*See |
| 18 | id.* at 24:10–12, 25:23–26:2.)  He asked the group questions and elicited responses from |

---

[1] Before becoming a Border Patrol Agent, Agent Ewers received five months of training at the Border Patrol Academy in Spanish, immigration law, tracking, and immigration inspections, among other things. (*See* Trial Tr. at 11:3–12:2.)  According to Agent Ewers, an immigration inspection is meant to "determin[e] a person's eligibility to be in the United States legally or illegally," (*see id.* at 11:25–12:2), and he considers his "duties and responsibilities" as a Border Patrol Agent to be to "[d]etect and deter persons illegally entering the country." (*See id.* at 10:25–11:2; *see also id.* at 15:3–7.)

Although Agent Ewers knew no Spanish before attending the Border Patrol Academy, his eligibility as a Border Patrol Agent hinged on his performance following two months of Spanish classes, held eight hours a day, five days a week. (*See id.* at 12:15–13:9; *see also id.* at 55:25–56:2.)  He is not fluent, (*see id.* at 55:6–7), and considers his fluency to be "low," but he also "was taught the words necessary for [his] job." (*See id.* at 12:6–11; *see also id.* at 57:11–58:2, 58:19–21, 63:20–64:9.)  Indeed, Agent Ewers received specific training in conducting immigration inspections in both Spanish and English, (*see id.* at 12:3–5), and during his over eleven years as a Border Patrol Agent, he has conducted "several hundred, hundreds" of immigration inspections, all in Spanish, and "receive[d] appropriate answers in Spanish" "[e]very time." (*See id.* at 13:13–21.)

each individual. (*See id.* at 26:3–7.) Agent Ewers asked what country each person was a citizen of, (*see id.* at 26:8–11); whether they had immigration documents to be lawfully present in the United States, (*see id.* at 27:15–18); and whether they knowingly entered the United States illegally. (*See id.* at 27:24–28:1.) Zepeda-Rodriquez responded that he did not have immigration documents to be in the United States lawfully and that he had knowingly entered the United States illegally.[2] (*See id.* at 27:22–23, 28:2–3.) Agent Ewers then arrested Zepeda-Rodriguez, (*see id.* at 28:4–5), and arranged for him to be transported to the station for processing. (*See id.* at 28:18–24.)

A subsequent search of the TECS database revealed no records that Zepeda-Rodriguez had crossed through any ports of entry. (*See id.* at 69:9–71:3.)

## II.     Procedural Background

The United States charged Zepeda-Rodriguez with improper attempted entry under 8 U.S.C. §1325(a)(1) on November 12, 2019. (*See generally* ECF No. 1 ("Compl.").) At his initial appearance, Magistrate Judge Robert N. Block ordered Zepeda-Rodriguez detained without prejudice pending trial, (*see* ECF Nos. 3, 6), and appointed Zepeda-Rodriguez counsel, (*see* ECF No. 3), with Chloe S. Dillon of Federal Defenders entering an appearance as lead counsel on December 3, 2019. (*See generally* ECF No. 5.) Magistrate Judge Robert A. McQuaid held a status hearing on November 15, 2019, (*see* ECF No. 7), at which he allowed Zepeda-Rodriguez to be released on bond pending trial. (*See generally* ECF Nos. 7–10.)

Zepeda-Rodriguez's case was transferred to Judge Lopez on November 21, 2019, (*see* ECF No. 11), and proceeded under the "Streamline" process, (*see* ECF No. 15-1 at 3–4), which, at that time, the United States Department of Justice ("DOJ") used to prosecute misdemeanor illegal entry charges under § 1325. *See United States v. Chavez-Diaz*, No. 18MJ20089 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018), *rev'd on other grounds*, 949 F.3d 1202 (9th Cir. Feb. 5, 2020). Following a status hearing before

---

[2] Because of a well-timed objection, Agent Ewers did not testify as to Zepeda-Rodriguez's response regarding his citizenship. (*See* Trial Tr. at 26:8–28:5.)

1  Judge Lopez on December 3, 2019, (*see* ECF No. 14), Zepeda-Rodriguez moved to dismiss
2  the Complaint, suppress statements, and grant leave to file further motions. (*See generally*
3  ECF No. 15 ("1st MTD").) As is relevant to the instant appeal, Zepeda-Rodriguez argued
4  that dismissal was required because his prosecution in Streamline court violated equal
5  protection, (*see* ECF No. 15-1 at 3–4), and the charging document did not allege that
6  Zepeda-Rodriguez knew he was not a United States citizen, (*see id.* at 4–5), and for
7  suppression of Agent Ewers' translation of Zepeda-Rodriguez's field statements as
8  inadmissible as hearsay and unqualified expert testimony. (*See id.* at 13–17.) At a
9  February 27, 2020 hearing, Judge Lopez denied Zepeda-Rodriguez's requests for dismissal
10 "for the reasons stated in 19cr2894 and 19cr3058" but deferred ruling on his motion to
11 suppress until trial. (*See* ECF No. 21.)

12      Following several continuances related to COVID-19, (*see* ECF Nos. 23–26,
13 30–34), Judge Lopez held a motion hearing on July 30, 2020, at which time she set a bench
14 trial for October 28, 2020. (*See* ECF No. 42.) On September 1, 2020, Zepeda-Rodriguez
15 filed a second motion to dismiss that, as is relevant to this appeal, sought dismissal on the
16 grounds that his prosecution violated equal protection under *Village of Arlington Heights*
17 *v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). (*See* ECF No. 43 ("2d
18 MTD") at 2–15.) Judge Lopez denied Zepeda-Rodriguez's Second Motion to Dismiss on
19 October 23, 2020. (*See generally* ECF No. 46.)

20      At the October 28, 2020 bench trial, the prosecution offered the testimony of two
21 witnesses: Agent Ewers, (*see* Trial Tr. at 9:10–64:11), and Officer Norman. (*See id.* at
22 67:8–72:3.) Zepeda Rodriguez's lead trial counsel, Salil Dudani, renewed his motion to
23 suppress Agent Ewers' testimony regarding his translation of Zepeda-Rodriguez's field
24 statements several times. (*See id.* at 8:16–20, 26:12–14, 64:21–66:13.) Judge Lopez
25 initially indicated that she "didn't think [Agent Ewer'] needed to be noticed as an expert
26 because he didn't provide expert testimony," (*see id.* at 66:14–18), and that her ruling
27 would be based on Agent Ewers' "ability to understand the [Spanish] language for purposes
28 of whatever interaction he's going to claim he had with the Defendant in this case." (*See*

*id.* at 8:21–9:5.) After hearing Agent Ewers' testimony, Judge Lopez reasoned that Agent Ewers "has established, in [her] view, sufficiency in the Spanish language" based on his testimony to the following facts:

> He's received training. He's been a Border Patrol agent for 11 years. He's spent approximately two months of his initial training, eight hours a day, five days a week, learning the proper Spanish necessary for his job. He had to pass tests. If he didn't pass those tests, he wouldn't be a Border Patrol agent. He's received additional training subsequent to that. He's been involved in hundreds of arrests, and he has not encountered a language difficulty.

(*See id.* at 26:18–27:1.) Judge Lopez therefore overruled the objection to Agent Ewers' testimony, concluding that Agent Ewers "qualifies to testify to a conversation that he had with this Defendant." (*See id.* at 27:1–4; *see also id.* at 66:18–67:2.)

After hearing closing arguments, (*see id.* at 72:20–87:18), Judge Lopez found Zepeda-Rodriguez guilty of violating § 1325(a)(1). (*See id.* at 87:21–88:20.) She proceeded to adopt her tentative and sentence Zepeda-Rodriguez to a sentence of time served, (*see id.* at 88:21–90:2, 91:6–13), after hearing from counsel.[3] (*See id.* at 90:3–91:5.) Zepeda-Rodriguez filed a timely notice of appeal on November 2, 2020. (*See generally* EFC No. 57); *see also* Fed. R. Crim. P. 58(g)(2)(B).

## LEGAL STANDARD

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. As such, a "defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." *See* Fed. R. Crim. P. 58(g)(2)(B).

"The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). In reviewing the conviction, the district court must "ask whether, after viewing the evidence in the light

---

[3] Zepeda-Rodriguez declined to address Judge Lopez. (*See* Trial Tr. at 91:3–5.)

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000); *see also United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008). Accordingly, the magistrate judge's findings of fact are reviewed for clear error, *see, e.g.*, *United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998), while the magistrate's legal conclusions, including challenges to the sufficiency of evidence and questions of statutory interpretation, are reviewed de novo. *See, e.g.*, *United States v. Biotronik, Inc.*, 876 F.3d 1011, 1016 (9th Cir. 2017); *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015).

## ANALYSIS

### I. Proof of Alienage

Section 1325(a)(1) of Title 8 of the United States Code prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." To establish liability under § 1325(a)(1), "the government ha[s] to prove beyond a reasonable doubt that [the defendant] was (1) an alien (2) who knowingly entered the United States (3) at a nondesignated entry point." *See United States v. Cerda-Ramirez*, 730 F. App'x 449, 453 (9th Cir. 2018) (citing 8 U.S.C. § 1325; *United States v. Arriaga-Segura*, 743 F.2d 1434, 1435 (9th Cir. 1984)). In other words, as is relevant to this appeal, the government must prove beyond a reasonable doubt the defendant is an "alien," *i.e.*, that the defendant was not a citizen of the United States at the time of the offense. *See, e.g.*, *United States v. Campos-Atrisco*, No. 19-MJ-024683-KSC-BAS-1, 2021 WL 5332918, at *4 (S.D. Cal. Nov. 16, 2021) (citing *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000)); *see also United States v. Rizo-Rizo*, 16 F.4th 1292, 1294 (9th Cir. 2021) (quoting plea colloquy listing elements for attempted illegal reentry defining "alien" as "a person who is not a natural born or naturalized citizen or a national of the United States"); *United States v. Rivera-Carrizosa*, 35 F.3d 573, at *3 (9th Cir. 1994) ("The elements of alienage are a foreign birth and an absence of naturalization." (unpublished table decision)).

Zepeda-Rodriguez contends that his conviction must be vacated because the government failed to prove his alienage beyond a reasonable doubt. (*See* AOB at 7–9.) Although the government attempted to elicit testimony from Agent Ewers regarding "what country [Zepeda-Rodriguez] was a citizen of," a well-timed objection prevented Agent Ewers from relaying Zepeda-Rodriguez's response. (*See* Trial Tr. at 26:8–28:3.) The question was never revisited, (*see generally id.*), and—despite Zepeda-Rodriguez's counsel's objection during the prosecution's closing argument that, "to the best of [their] recollection, there was not any testimony as to an admission of citizenship," (*see id.* at 74:3–17)—the prosecution and Judge Lopez proceeded based on the assumption that that admission was in the record. (*See, e.g.*, *id.* at 75:13–14, 88:3–20.) Zepeda-Rodriguez argues that, "[w]ithout this admission, there was no evidence of alienage." (*See* AOB at 8.) The government responds, without citing any authority, that Zepeda-Rodriguez's admissions that he did not have immigration documents to be lawfully present in the United States and that he "knowingly entered the United States illegally," combined with testimony regarding his mode of entry, "clearly established that Defendant [wa]s an alien." (*See* RB at 5.)

First, although an admission of alienage combined with mode-of-entry evidence may suffice to establish alienage, *see, e.g.*, *United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009) (concluding that mode-of-entry evidence was sufficient to corroborate the defendant's admissions of alienage), Zepeda-Rodriguez's admissions in the record do not amount to an admission of alienage. Whether Zepeda-Rodriguez had immigration documents to be lawfully present in the United States or knowingly entered the United States illegally, (*see* Trial Tr. at 27:15–28:3), does not directly implicate whether or not he was a citizen of the United States at the time of the charged offense. The Parties do not identify—and the Court has not found—any authority supporting the government's proposition. Indeed, if those two questions alone were sufficient to establish alienage, common sense would dictate that the standard, three-question immigration inspection would be one question shorter.

Second, alienage can be established without an admission from the defendant, *see, e.g.*, *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075–76 (9th Cir. 2005) (affirming jury's conviction where "[t]he government's [disputed] evidence to support its claim of alienage consisted of (1) a Mexican birth certificate obtained by [the defendant]'s father when he was 13; (2) elementary and secondary school records from American schools that listed Mexico as his place of birth; (3) a 1985 certificate of baptism issued in the United States listing his birthplace as Mexico; and (4) evidence of deportation"); *United States v. Quintana-Torres*, 235 F.3d 1197, 1200 (9th Cir. 2000) (affirming jury's conviction where evidence of alienage included the defendant's birth certificate and other documents showing a prior deportation); however, the prosecution cites, and the Court has located, no authority to support the government's position that alienage can be proven beyond a reasonable doubt based solely on the defendant's method of entry and admissions to other elements of the charged offense. Indeed, the Court has not located any case affirming a § 1325 or § 1326 conviction based on evidence of alienage as thin as that in the record here, and the Court is concerned by the precedent that an affirmance in this case would set.

In light of the foregoing, the Court **VACATES** Zepeda-Rodriguez's conviction on the ground that no reasonable trier of fact could conclude that the prosecution proved his alienage beyond a reasonable doubt.[4] Given the absence of an admission of alienage here, the Court need not consider Zepeda-Rodriguez's alternative *corpus delicti* argument. (*See* AOB at 9–10); *see also United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) ("When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require 'some independent corroborating evidence in order to serve as the basis for a conviction.'" (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992))). While the Court need not address Zepeda-Rodriguez's remaining arguments given its decision to vacate his conviction, the Court briefly considers and rejects Zepeda-Rodriguez's alternative grounds for relief in turn.

---

[4] Indeed, as mentioned above, *see supra* page 8, Judge Lopez's conviction was based on her erroneous recollection that the trial record contained an admission of alienage by Zepeda-Rodriguez.

## II. Knowledge of Alienage

Second, as in his First Motion to Dismiss, (*see* 1st MTD at 4–5), Zepeda-Rodriguez contends that "[k]nowledge of one's citizenship is an element of attempted illegal entry under 1) basic principles of attempt liability and 2) the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019)." (*See* AOB at 10; *see also generally id.* at 10–11.)  After briefing in this appeal had closed, however, the Ninth Circuit definitively held that "8 U.S.C. § 1325(a) is a regulatory offense, and thus knowledge of alienage is not an element."  *See United States v. Rizo-Rizo*, 16 F.4th 1292, 1293 (9th Cir. 2021); *see also id.* at 1298–99.  On *de novo* review, *see United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020), the Court therefore **REJECTS** Zepeda-Rodriguez's second argument on appeal.

## III. Admission of Agent Ewers' Interpretation of Zepeda-Rodriguez's Field Statements

Zepeda-Rodriguez argues that Judge Lopez "erred in admitting Agent Ewers's English interpretation of Mr. Zepeda-Rodriguez's field statements" for two reasons.  (*See* AOB at 11.)  First, Zepeda-Rodriguez contends that Agent Ewers' statements were inadmissible hearsay because Agent Ewers was not a "mere language conduit" pursuant to *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991).  (*See* AOB at 11–13.)  Second, Zepeda-Rodriguez asserts that Agent Ewer was not—and cannot be—qualified as an expert witness under Federal Rule of Evidence 702.  (*See* AOB at 11, 13–14.)  The government opposes Zepeda-Rodriguez's arguments.  (*See* RB at 16–18.)

### A.  Hearsay

According to Zepeda-Rodriguez, Agent Ewers's testimony is inadmissible hearsay for two reasons: (1) "Zepeda-Rodriguez's affirmative responses to Agent Ewers's field interrogatories . . . were offered for the truth of the matter asserted[,]" and (2) "the government did not establish that Agent Ewers was a mere 'language conduit' under" *Nazemian*, 948 F.2d 522.  (AOB at 12.)  The government responds that Judge Lopez properly admitted Agent Ewers' translation of Zepeda-Rodriguez's field statements as statements of a party opponent under Federal Rule of Evidence 801(d)(2), (*see* RB at 16),

and that Zepeda-Rodriguez misreads and misapplies *Nazemian*. (*See* RB at 16–18.) The Court agrees with the prosecution.

Rule 801(d)(2)(A) provides that when a statement made by a party is offered into evidence against the party who made the statement, the statement at issue is "not hearsay." Here, Zepeda-Rodriguez made admissions to Agent Ewers at the time of his apprehension. Unlike in *Nazemian*—in which the Ninth Circuit addressed "the issue of how to treat extrajudicial statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter," *see* 948 F.2d at 526—Agent Ewers did not rely on an interpreter when questioning Zepeda-Rodriguez. Further, and also unlike in *Nazemian*, no interpreter was required because Agent Ewers was sufficiently proficient in Spanish to understand Zepeda-Rodriguez's admissions for the reasons discussed previously. *See supra* note 1. The Court therefore concludes that Judge Lopez did not err in concluding that Agent Ewers' testimony as to Zepeda-Rodriguez's Spanish field statements was not hearsay.

### B. *Qualification as an Expert*

Zepeda-Rodriguez next argues that, "[b]y acting as a Spanish interpreter in his conversation with Mr. Zepeda-Rodriguez in the field, Agent Ewers was purporting to employ specialized knowledge[,]" meaning "the government had to qualify Agent Ewers as an expert." (*See* AOB at 13.) When Zepeda-Rodriguez raised this issue in his First Motion to Dismiss, Judge Lopez deferred ruling on it until trial. (*See* ECF No. 21.) When Zepeda-Rodriguez reasserted the issue at trial, (*see* Trial Tr. at 8:17–20), Judge Lopez found that Agent Ewers "was not presented as an expert" and that she did not "believe he testified as an expert . . . because he didn't provide expert testimony." (*See id.* at 66:14–18.) Instead, she indicated that the admissibility of Agent Ewers' testimony would be based on her satisfaction with his "ability to understand the [Spanish] language for purposes of whatever interaction he's going to claim he had with the defendant in this case." (*See id.* at 8:21–9:5.) Agent Ewers then laid a foundation as to his familiarity with Spanish for purposes of conducting immigration inspections, *see supra* note 1, and Judge

Lopez found that "[h]e ha[d] established, in [her] view, sufficiency in the Spanish language." (*See* Trial Tr. at 26:18–27:4; *see also id.* at 66:24–67:2.) The Court therefore agrees with the government that "Agent Ewers testified as to matters within his personal knowledge . . . as a lay witness" pursuant to Federal Rule of Evidence 602. (*See* RB at 6.)

Here, Agent Ewers did not testify to any "scientific, technical, or other specialized knowledge," *see* Fed. R. Evid. 702(a), but rather to his "personal knowledge of" the admissions Zepeda-Rodriguez made to him in the field. *See* Fed. R. Evid. 602. As Judge Lopez recognized, (*see* Feb. 20 Tr. at 4:20–25), so long as Agent Ewers laid a sufficient foundation that he was able to understand what Zepeda-Rodriguez relayed to him, the Court properly may rely on Agent Ewers' testimony. Because Judge Lopez correctly concluded that Agent Ewers had laid a sufficient foundation, *see supra* note 1, she did not err in admitting his testimony. The Court therefore **REJECTS** Zepeda-Rodriguez's third argument on appeal.

## IV. Equal Protection

Finally, consistent with his First and Second pretrial Motions to Dismiss, (*see* 1st MTD at 3–4 (Streamline process); 2d MTD at 2–15 (*Arlington Heights*)), Zepeda-Rodriguez again alleges that his prosecution violates the Equal Protection Clause for two reasons: First, Zepeda-Rodriguez contends that § 1325 is unconstitutional under *Arlington Heights* because the criminalization of illegal entry was enacted with a discriminatory purpose and has disparately impacted Mexican defendants. (*See* AOB at 14; *see also generally id.* at 14–22.) Second, Zepeda-Rodriguez claims he was treated differently than similarly situated United States citizens charged with an equivalent crime who were prosecuted in "petty offense court." (*See id.* at 14; *see also generally id.* at 22–25.) Judge Lopez rejected both of these arguments, (*see generally* ECF No. 21 (Streamline process); ECF No. 46 (*Arlington Heights*)), and, for the reasons discussed below, so does this Court.

### A. Arlington Heights

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between

individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). "[T]he necessary discriminatory racial purpose [need not] be express or appear on the face of the statute." *See id.* at 241. Nonetheless, "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *See Arlington Heights*, 429 U.S. at 264–65. Rather, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *See id.* at 265.

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. Relevant considerations include "whether [the impact of the official action] 'bears more heavily on one race than another[;]'" "[t]he historical background of the decision[;]" "[t]he specific sequence of events leading up to the challenged decision[;]" "[d]epartures from the normal procedural sequence[;]" "[s]ubstantive departures . . . , particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached[;]" and "[t]he legislative or administrative history . . . , especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *See id.* at 266–68.

If this analysis reveals that "a discriminatory purpose is found to be a motivating factor for the government's decision, a court must apply strict scrutiny, as it would to a law involving a facial classification on the basis of race." *See United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441, at *1 (S.D. Cal. Dec. 8, 2020) (citing *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999)). "Absent proof of a discriminatory purpose, [however,] courts apply a rational basis standard of review." *See id.* (citing *Arlington Heights*, 429 U.S. at 265–66; *United States v. Dumas*, 64 F.3d 1427, 1430–31 (9th Cir. 1995)).

On appeal, Zepeda-Rodriguez contends that Judge Lopez erred in denying his Second Motion to Dismiss based on the unconstitutionality of § 1325 under *Arlington*

*Heights*. (*See* AOB at 14–22.) Specifically, Zepeda-Rodriguez argues that Judge Lopez erred in concluding that (1) "two subsequent reenactments of illegal entry in 1952 and 1990 had cleansed the crime of illegal entry of any discriminatory intent[,]" (*see id.* at 15 (citing *United States v. Lucas-Hernandez*, No. 19MJ24522-LL, 2020 WL 6161150, at *2 (S.D. Cal. Oct. 21, 2020))); (2) "the disparate impact on Mexican defendants was 'more readily explained by the geographic proximity of the border to Mexico and Latin America than by animus[,]'" (*see id.* at 15 (quoting *Lucas-Hernandez*, 2020 WL 6161150, at *3)); and (3) "rational basis review applied because § 1325 was an immigration regulation, and . . . [§ 1325] satisfied this test." (*See* AOB at 15 (citing *Lucas-Hernandez*, 2020 WL 6161150, at *3–4).) The Court review's Zepeda-Rodriguez's challenges *de novo*. *See United States v. Baker*, 63 F.3d 1478, 1490 (9th Cir. 1995) (citing *United States v. Harding*, 971 F.2d 410, 412 (9th Cir. 1992)).

Although the Ninth Circuit has yet to weigh in, courts in this District consistently have concluded that Congress did not act with a racially discriminatory motive in enacting § 1325(a)(1). *See, e.g.*, *United States v. Campos-Atrisco*, No. 19MJ024683KSCBAS1, 2021 WL 5332918, at *4–5 (S.D. Cal. Nov. 16, 2021) (Bashant, J.); *United States v. Gallegos-Aparicio*, No. 19-CR-2637-GPC, 2020 WL 7318124, at *1–4 (S.D. Cal. Dec. 11, 2020) (Curiel, J.); *Rios-Montano*, 2020 WL 7226441, at *2–8 (Curiel, J.); *United States v. Lazcano-Neria*, No. 3:20-mj-04538-AHG, 2020 WL 6363685, at *6–9 (S.D. Cal. Oct. 29, 2020) (Goddard, Mag. J.); *Lucas-Hernandez*, 2020 WL 6161150, at *2–4 (Lopez, Mag. J.); *United States v. Morales-Roblero*, No. 3:19-MJ-24442-AHG, 2020 WL 5517594, at *7–10 (S.D. Cal. Sept. 14, 2020) (Goddard, Mag. J.); *United States v. Ruiz-Rivera*, No. 3:20-MJ-20306-AHG, 2020 WL 5230519, at *2–3 (S.D. Cal. Sept. 2, 2020) (Goddard, Mag. J.). Like the defendants and appellants to those cases, Zepeda-Rodriguez argues that § 1325 is "presumptively unconstitutional" under *Arlington Heights* because Congress enacted the Undesirable Aliens Act of 1929 with a discriminatory purpose and it has disparately impacted Mexican defendants. (*Compare* AOB at 15), *with Campos-Atrisco*, 2021 WL 5332918, at *4; *Gallegos-Aparicio*, 2020 WL 7318124, at *1; *Rios-Montano*,

2020 WL 7226441, at *1; *Lazcano-Neria*, 2020 WL 6363685, at *6; *Lucas-Hernandez*, 2020 WL 6161150, at *1–3; *Morales-Roblero*, 2020 WL 5517594, at *7; *Ruiz-Rivera*, 2020 WL 5230519, at *1. Zepeda-Rodriguez provides no justification to depart from these well-reasoned rejections of his arguments on appeal.

First, although there is no dispute that "[t]he Congressional Record [from the 1920s related to criminalization of illegal entry by aliens] reflects an open hostility to Mexican immigrants based on undeniably racist notions," see *Lazcano-Neria*, 2020 WL 6363685, at *6, "the current crime [Zepeda-Rodriguez] was charged with—attempted illegal entry—was not added until the Immigration Act of 1990 [(the "1990 Act")] was passed." See *Campos-Atrisco*, 2021 WL 5332918, at *4 (citing Pub. L. No. 1010-649, § 543(b)(2), 104 Stat. 5059). Rather than address the legislative history of the 1990 Act, (see AOB at 14–18 (addressing only legislative history of 1929 statute); ARB at 11–14 (same)), Zepeda-Rodriguez contends that the original discriminatory intent behind the 1929 statute remains relevant despite subsequent reenactments in 1952 and 1990 based on the Supreme Court's recent decisions in *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 591 U.S. ___, 140 S. Ct. 2246 (2020). (*See* AOB at 15–17.) Other courts within this District, however, have concluded that "*Ramos* and *Espinoza*, neither of which involved an equal protection challenge, did not hold that the discriminatory motivations of a previous legislature are determinative of the outcome of an *Arlington Heights* analysis of a law enacted by a subsequent legislature." See *Rios-Montano*, 2020 WL 7226441, at *4 (first citing *Ramos*, 140 S. Ct. at 1401; then citing *Espinoza*, 140 S. Ct. at 2258–59); *accord Gallegos-Aparicio*, 2020 WL 7318124, at *2; *Lazcano-Neria*, 2020 WL 6363685, at *7–8; *Lucas-Hernandez*, 2020 WL 6161150, at *2–3; *Morales-Roblero*, 2020 WL 5517594, at *9–10; *Ruiz-Rivera*, 2020 WL 5230519, at *3. The Court therefore "looks to the intent of Congress in passing the more recent iterations of the Immigration Act rather than the intent of previous Congresses." See *Campos-Atrisco*, 2021 WL 5332918, at *4; *accord Gallegos-Aparicio*, 2020 WL 7318124, at *3; *Rios-Montano*, 2020 WL 7226441, at *4; *Lazcano-Neria*, 2020 WL 6363685, at *7;

*Lucas-Hernandez*, 2020 WL 6161150, at *3; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *3. Zepeda-Rodriguez, however, has not demonstrated that "the legislative history for the 1990 legislation . . . reveal[s] any discriminatory motive." *See Campos-Atrisco*, 2021 WL 5332918, at *4 (quoting *Rios-Montano*, 2020 WL 7226441, at *7); *accord Gallegos-Aparicio*, 2020 WL 7318124, at *3–4; *Rios-Montano*, 2020 WL 7226441, at *4–7; *Lazcano-Neria*, 2020 WL 6363685, at *6; *Lucas-Hernandez*, 2020 WL 6161150, at *3; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *3; (*see also* AOB at 14–18 (failing to address legislative history of 1990 Act); ARB at 11–14 (same)).

Second, "although Latinx people are likely disproportionally affected by Section 1325, the disparate impact alone . . . is not stark enough to show discriminatory motive, given that the disparity is explainable on grounds other than race." *See Campos-Atrisco*, 2021 WL 5332918, at *5 (alteration in original) (quoting *Rios-Montano*, 2020 WL 7226441, at *8). As Judge Bashant explained, these other grounds include:

> [t]he proximity of Mexico and Central American countries to the United States, the ability to come to the United States on foot rather than the need for a ship or plane, and the fact that a disproportionate number of individuals from these countries are coming to the United States because of political and economic situations in their own countries.

*See id.* Accordingly, the Court agrees with Judge Lopez that Zepeda-Rodriguez has failed to carry his burden of establishing that Congress acted with a racially discriminative motive in enacting § 1325 such that his conviction is unconstitutional under *Arlington Heights*. *See Campos-Atrisco*, 2021 WL 5332918, at *5; *Gallegos-Aparicio*, 2020 WL 7318124, at *4; *Rios-Montano*, 2020 WL 7226441, at *8; *Lazcano-Neria*, 2020 WL 6363685, at *8; *Lucas-Hernandez*, 2020 WL 6161150, at *3; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *3.

Third, absent evidence of a discriminatory motive, an equal protection challenge to a facially neutral law such as § 1325 is subject to rational basis review. *See Arlington Heights*, 429 U.S. at 265–66; *see also United States v. Ayala-Bello*, 995 F.3d 710, 714–15

(9th Cir.) (applying rational basis test to prosecution of aliens under § 1325(a)(1) in streamline process because "criminal defendants are not a protected class," "disparate impact [on aliens] does not prove disparate treatment[,]" and "[f]ederal classifications based on alienage receive rational basis review" (first citing *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007); then citing *Wayte v. United States*, 470 U.S. 598, 610 (1985); finally citing *Sudomit v. McMahon*, 767 F.2d 1456, 1464 (9th Cir. 1985))), *cert. denied*, 142 S. Ct. 513 (2021); *Rios-Montano*, 2020 WL 7226441, at *1; *Lazcano-Neria*, 2020 WL 6363685, at *8; *Lucas-Hernandez*, 2020 WL 6161150, at *3; *Morales-Roblero*, 2020 WL 5517594, at *3, *10; *Ruiz-Rivera*, 2020 WL 5230519, at *4. As Judge Lopez explained, "[t]he rational-basis test is deferential and is met when a law is rationally related to a legitimate government purpose." *See Lucas-Hernandez*, 2020 WL 6161150, at *3 (first citing *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011); then citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)); *accord Ayala-Bello*, 995 F.3d at 715 (quoting *Heller*, 509 U.S. at 320). This requires Zepeda-Rodriguez to "negate 'every conceivable basis which might support [the legislative classification].'" *See Ayala-Bello*, 995 F.3d at 715 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). As other courts in this District have concluded, Zepeda-Rodriguez cannot meet this heavy burden because "the United States has a legitimate interest in deterring illegal entry, and § 1325(a)(1) serves that interest." *See Lazcano-Neria*, 2020 WL 6363685, at *7; *accord Lucas-Hernandez*, 2020 WL 6161150, at *4; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *4; *see also United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998) ("In fact, it is plain that [Section] 1326 [of Title 8 of the United States Code] is a necessary piece of the immigration-regulation framework; without the threat of criminal prosecution that it provides, Congress's immigration-regulation authority would be fatally undermined—all bark and no bite.").

For these reasons, the Court concludes that Judge Lopez did not err in concluding that § 1325(a)(1) does not violate the Equal Protection Clause. Accordingly, the Court **DENIES** Zepeda-Rodriguez's appeal on this ground.

### B.     Streamline Process

Finally, Zepeda-Rodriguez contends that he was subjected to disparate treatment in violation of the Equal Protection Clause when he was prosecuted in ordinary criminal court under the Streamline process rather than in petty offense court. (*See* AOB at 22–25.) As with Zepeda-Rodriguez's argument concerning knowledge of alienage, *see supra* Section II, the Ninth Circuit rejected this argument during the pendency of this appeal. *See generally Ayala-Bello*, 995 F.3d at 713–14, 716 (holding that the government does not violate equal protection by prosecuting illegal border crossings on the normal criminal docket). Accordingly, on *de novo* review, *see Baker*, 63 F.3d at 1490, the Court **DENIES** Zepeda-Rodriguez's appeal on this ground. *See, e.g.*, *Campos-Atrisco*, 2021 WL 5332918, at *5 (summarily dispensing of identical equal protection argument based on the Ninth Circuit's decision in *Ayala-Bello*).

## CONCLUSION

For the foregoing reasons, the Court **VACATES** Zepeda-Rodriguez's conviction (ECF No. 51) on the grounds that the government failed to introduce sufficient evidence to establish his alienage beyond a reasonable doubt but **DENIES** Zepeda-Rodriguez's additional arguments for reversal in his Appeal (ECF No. 57). The Court therefore **REMANDS** this case to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:  April 29, 2022

_____
Honorable Todd W. Robinson
United States District Judge